The opinion of the court was delivered by
Rogers, J.
This was a suit brought to recover the sum of one-hundred and thirty-one dollars, fifty cents, on a bond given to secure part of the purchase money of a tract of land sold by the defendants, to Daniel M'Mullen, and assigned by him for a valuable consideration to the plaintiff, Ann Fox, since intermarried with John Rudy.
There is no doubt, that the assignee of a bond, whether the assignment be legal or equitable, takes it at his own peril, subject to every defalcation which might have been made against the obligee by the obligor, at the time of the assignment, or notice of it. 1 Dall. 23. 2 Dall. 49. 4 Serg. &. Rawle, 177. The defence relied on, was, that the bond, on which suit was brought, was given to secure the payment of the purchase money of a tract of land sold by Daniel M'Mullen to Daniel and John Wenner:. That subsequent to the articles of agreement, but before the execution of the deed, Samuel Ensminger obtained a judgment against Daniel M'Mullen, to wit, to the December Term, 1814, No. 44. The first question raised by the plaintiffs in erro», is, what is the legal effect of this judgment? and about t ús we have no difficulty. It binds the legal estate of Daniel M'Mullen in the land, which was not parted with at the time of the rendition of the judgment. The sheriff’s vendee would stand precisely in the situation of M‘Mullen, and therefore it is incumbent on a purchaser to search the office for judgments, before payment of his money, up to the time of the execution of his deed. The sheriff’s vendee would be entitled to the unpaid purchase money; the payment of which he could enforce, by an action of ejectment against the terre-tenant of the land. The sale of the legal estate by a judgment mesne between the articles of agreement and the execution of the deed would transfer, as a necessary incident, the money remaining unpaid. And in this there is no hardship upon the original vendee, as he has notice upon record, and can have no difficulty in protecting himself, if he uses ordinary diligence.
In an action of ejectment brought by the vendee of the sheriff, *21 the original vendee, could protect himself only, by payment or tendering the purchase money, unpaid at the time of the rendition of the judgment; on doing so, he would be entitled to a conveyance of the legal title vested in the sheriff’s vendee.
In the case of the sale of an equitable interest in lands, it has already been decided, that the vendee of the sheriff stands in the same situation as the former owner of the equitable interest. In Auwater v. Mathiott, 9 Serg. & Rawle, 397, it has been held that the judgment creditors of a vendee of land, who has paid part of the purchase money, and has possession of the land, but has received no deed, are entitled to the proceeds of sale of his title under an execution, in preference to the vendor.
By the law of Pennsylvania, all the real estate of the debtor, whether legal or equitable, is bound by a judgment against him, and may be taken in execution and sold for the satisfaction of the debt. At common law, an equitable estate is not bound by a judgment, or subject to an execution. We have no Court of Chancery, and have, therefore, from necessity, established it as a principle, that both judgment and execution have an immediate operation on equitable estates. 9 Serg. & Rawle, 397.
If then a judgment binds an equitable interest in lands, a fortiori, it binds a legal interest, and to the extent of the interest at the time of the judgment.
Although prima facie, the obligor may make every defence against the assignee, which at the time of the assignment, or notice of it, he could have made against the obligee, yet he may by his own conduct, preclude himself from the benefit of that right. Thus it has been held that if the assignee calls on the obligor, and informs him he is about to take an assignment of his bond, and the obligor acknowledges that it is due, without any allegation of defence, he shall not be permitted to take defence against the assignee. And this whether his silence proceeds from ignorance or design. It would be most inequitable and unjust, that he should;, because if any loss afterwards occur, it arises from the negligence or folly of the obligor, and not the default of the assignee, who has taken every pains to inform himself of the real situation of the parties. If any injury accrues, it is right that he who causes it should bear the loss. The cases all go upon the ground that the assignee has acted with good faith, and without notice of any defect of title, or valid defence, and with a wish not to ensnare the obligor, but to protect himself. As bonds are an article of commerce, and are made transferable, equitably and expressly by an act of assembly, it would be legalising fraud to hold any other doctrine. It appears, that Daniel M‘Mullen came to the house of old Mr. Fox, offered to sell this bond, that Henry Fox with Daniel M'Mullen ealled on Jacob Wenner, and told. him. that he had found out a place to sell the bonds. That M'Mullen took the bonds out of his pocket, and laid them on the table, and that Wenner took them up *22 and looked at them and said, “ Yes, they are my bonds, and I am willing to pay them at any time, but I have not got the money now.” M‘Mullen then asked him if he was willing old Fox should buy them. Wenner said, “Yes, it will be better for me, if you sell them hereabouts; then I can pay them easier than go to Halifax to pay them.” M‘Mullen then told Wenner that it was for this that old Fox had sent his son along with him; that he did not trust to him. M'Mullen then asked Wenner again if he was satisfied. He said, “ Yes, I would rather have it so than not.” That this conversation was communicated to old Fox in the presence of Ann Fox, and that Ann Fox purchased the bond and took the assignment on which this suit was brought.
It was not, it is true, Ann Fox who called on Wenner, nor was Henry Fox her agent; but this can make no difference in the principle. The question is, was Ann Fox induced to purchase the bond under the representation made by Wenner, which w'as communicated to her, that he had no defence, and that he was willing and desirous that the bond should be sold in the neighbourhood. If this should be the opinion of the jury, who are the proper judges of the fact, and that there was no imposition on Wenner in which she was concerned, then every principle of law, and of common sense, would say, that Wenner, and not Ann Fox, should sustain the loss if any arises. In such a case, the verdict of the jury should he in favour of the plaintiff to the amount due upon the bond.
Judgment reversed, and a venire facias de novo awarded.