# Hutchison *versus* Gill.

Where a mortgagor, at the same time that he executes a mortgage, delivers to the mortgagee a writing, certifying that he had no defence, he cannot set up, as against a purchaser of the mortgage, that there was fraud in obtaining the mortgage, or a misappropriation by the mortgagee of the money raised by the sale.

October 9th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. GREEN, J., absent.

Error to the Court of Common Pleas, No. 2, of *Allegheny county*: Of October and November Term 1879, No. 73.

Scire facias sur municipal claim, by S. B. W. Gill, for use of Mrs. Eliza Lewis and William W. Lewis, against John Hutchison.

The defendant filed the following special pleas:—

"That the mortgage sued on was given by him to the said Gill, as collateral security for the payment of defendant's 'written obligation' to said Gill for $8000, and that the said written obligation is not in the possession, ownership or control of these equitable plaintiffs.

"And further, that the said 'written obligation,' and also the mortgage sued on in this case, were given to the said Gill to secure

him for a loan which he was to make to this defendant, when required in the future, and this defendant has never yet required him to lend any money; and neither the said Gill, nor any person for him, has ever loaned any money to this defendant, or to any person for him, on account of the said 'written obligation,' or on account of the mortgage sued on."

It appeared on the trial that on February 5th 1877, Hutchison gave to Gill his promissory note for $8000, and to secure said note executed to Gill the mortgage in suit, on certain property in Allegheny City. He also delivered to Gill, at the same time, a bond and the following certificate of no defence:—

"I, John Hutchison, hereby certify and acknowledge that a mortgage made by me to S. B. W. Gill, dated February 5th, A. D. 1877, for $8000, payable in two years, with interest payable semi-annually, together with the bond of myself accompanying the same, is justly, fully and entirely owing and payable according to the terms and conditions thereof. And I hereby also further certify to any person or persons who may desire to purchase the same, that I have no drawback, claim, set-off or other defence of any kind whatever to the payment of any part of said mortgage, either principal, interest or commissions, when due and payable or collectible by the terms and conditions therein recited as aforesaid.

Witness my hand and seal, this February 27th 1877.

S. B. W. GILL [SEAL].

Attest, W. A. RIDGE."

It seems these instruments were given to Gill to enable him to raise money for Hutchison, when needed by the latter. While Hutchison admitted that his signature was attached to the certificate of no defence, he alleged that it was no part of the agreement between himself and Gill that he should execute such a paper; that he had no knowledge of ever having signed it, and that it was obtained from him by fraud. There was no direct evidence to show that a fraud had been practised upon him in obtaining the certificate. It appeared by the testimony of Hutchison that he received no consideration from Gill for these instruments; that they were given to Gill to raise funds to enable Hutchison to carry out a contract, but that Gill never gave him any money whatever therefor.

Being in possession of these three instruments, Gill, on February 27th 1877, sold the bond and mortgage to the equitable plaintiffs below, Mrs. Eliza Lewis and her son, W. W. Lewis, for the cash consideration of $7360, which they then paid Gill, who thereupon assigned them the bond and mortgage. The assignment of the mortgage was immediately entered upon the record.

Before the purchase was made or the money paid to Gill, he exhibited to W. W. Lewis, who was acting also for his mother, the

[Hutchison *v.* Gill.]

certificate of no defence; and after the assignment was made of record, the certificate was delivered to Mr. Lewis.

Gill also negotiated the $8000 note in the Bank of Commerce of Pittsburgh, and in September 1877 absconded. The bank brought suit against Hutchison on the note and recovered judgment. Hutchison never received anything whatever from Gill for the note.

The court, White, J., affirmed the following points of plaintiff:—

1. That if the jury find from the evidence that at or immediately before the assignment of the mortgage in suit to the beneficial plaintiffs, W. W. Lewis paid therefor to Gill the amount of the mortgage, less the discount, and that at the time of such payment Gill had in his possession the mortgage and bond and "no defence" paper, and exhibited them to said Lewis, who, on the faith thereof, paid Gill the money, the equitable plaintiffs are entitled to recover.

2. The defendant has failed successfully to impeach the "no defence" paper, as against the equitable plaintiffs.

And further charged:—

"I do not think the evidence is sufficient to justify the jury in finding the certificate of 'no defence' was obtained from the defendant by fraud; and if the case was submitted to them on that question, and they so found, I should feel constrained to set aside their verdict."

Verdict for plaintiff, and after judgment defendant took this writ, and alleged that the court erred in the refusal of the foregoing points and in charging as above.

*Robert Pollock* and *Thomas M. Marshall*, for plaintiff in error.—Hutchison asserted that his signature to the bond and certificate of no defence was procured by Gill without his knowledge or consent, and therefore it was a fraud on him, and should invalidate the instruments. The certificate was not competent evidence unless it was first invested with all the qualities that constituted it an estoppel. The proof of the signature of Hutchison to it was the first step in that direction. But the equitable plaintiffs must go a step further, and show that they relied on it and acted on it. They must show that by reason of the statements contained in it they were induced to pay to Gill the sum agreed on for the mortgage. Unless this certificate, and it alone, produced this force and effect on the mind of W. W. Lewis, the qualities of an estoppel were not imparted to it, and if not, it served no purpose in the trial of the issue, and was irrelevant: Bispham's Equity, sect. 291; State *v.* Laies, 52 Mo. 396; Weaver *v.* Lynch, 1 Casey 449; Eldred *v.* Hazlett, 9 Id. 307; Wilcox *v.* Howell, 44 N. Y. 398.

*M. W. Acheson*, for defendants in error.—The mortgagor hav-

[Hutchison v. Gill.]

ing given a certificate that he has no defence, is estopped from setting up a defence against an assignee: Ashton's Appeal, 23 P. F. Smith 153; McMullen *v.* Wenner, 16 S. & R. 18; Weaver *v.* Lynch, *supra;* Scott *v.* Sadler, 2 P. F. Smith 211. Accepting Hutchison's own testimony, the utmost that·can be said is that he signed the paper without understanding its contents and without inquiry in respect thereto. But if this be so, upon what just principle can he throw the loss resulting from his misplaced confidence in his unfaithful agent upon the innocent assignees, who invested their money on the faith of the certificate?

Where the fraud consists in the misapplication of the proceeds received for the paper, it will not affect it in the hands of the holder, as he is not in any manner bound to look to their application, nor responsible for a misappropriation of them: Gray's Adm'r *v.* Bank of Kentucky, 5 Casey 365; Pennsylvania Railroad Co.'s Appeal, 5 Norris 80. (See Robertson *v.* Hay, *ante*, p. 242.)

The judgment of the Supreme Court was entered, October 20th 1879,

PER CURIAM.—When a mortgagor, at the same time that he executes a mortgage, delivers to the mortgagee a writing, certifying that he has no defence or defalcation, it is in effect an agreement that the mortgagee shall negotiate the mortgage. It is an acknowledgment that he has received full consideration. It is indeed most usual to execute such writings when no consideration has been received, and the sole object of the mortgage is to raise money by the sale of it. It would be in the highest degree inequitable to allow the mortgagor to set up that there was fraud in obtaining the mortgage, or in a misappropriation by the mortgagee of the money raised by the sale. It is unnecessary to say what would be the effect of actual fraud in procuring the "no defence" paper. In this case there was no evidence of such fraud.

Judgment affirmed.