# Griffiths *versus* Sears, Assignee to use of Perot.

112  523
114  427
115  303

112  523
149  166
153  256

112  523
178   36

112          523
21 SC  ²617

1. A bond given by way of margin, to secure a settlement of differences in a stock gambling transaction, is void, for want of a good and legal consideration.

2. An assignee of a bond with notice of the illegality of the contract which forms the consideration, will not be protected by a declaration of no set-off.

3. In order that a declaration of no set-off of an obligor may operate as an estoppel in favor of an assignee of his bond, the latter must show that he or some prior assignee was a *bona fide* purchaser for value upon the faith of it.

4. To entitle an assignee of a bond to the protection of a *bona fide* purchaser for value without notice, he must not only have paid a valuable consideration for the assignment, but it must have been actually paid before notice of the consideration being void. Where the consideration has been secured by contract, bond or mortgage, he will not be protected, unless he be diligent to stop payment of the same. Where part of the price only has been paid, before notice, he is entitled to protection only *pro tanto*.

5. The purchaser of a judgment is ordinarily charged with the inspection of the record of that judgment, and is therefore, in general, affected with notice of any rights which it plainly discloses.

April 7th, 1886.     Before MERCUR, C. J., GORDON, PAX-
SON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas, No. 3, of *Philadel-
phia county:* Of January Term, 1886, No. 246.

This was an issue between John V. Sears, assignee of Harry
F. Newhall, to the use of T. Morris Perot, plaintiff, and Elijah
E. Griffiths, defendant.    Judgment entered on a bond given
by Griffiths had been opened to let him into a defence.    He
pleaded, payment with leave, etc.

The facts as they appeared on the trial before LUDLOW, P. J.,
were as follows:

In 1880, Elijah E. Griffiths commenced buying stocks on a
margin from Harry F. Newhall, a stock broker.    Griffiths at
first deposited with Newhall, as a margin, $300, and after hav-
ing lost that, in order to protect said Newhall from any loss
which he might incur in buying or selling stocks on said Grif-
fith's account, said Elijah E. Griffiths, with his mother, Cath-
arine E. Griffiths, and sister, Anna E. Griffiths, executed and
delivered to said Harry F. Newhall a bond and mortgage,
dated May 8th, 1880, for $4,000, conditioned for the payment
of $2,000 at the expiration of one year from date, together
with interest thereon.    Newhall never paid any money for the
bond and mortgage, and it was only intended to indemnify him
in case of loss.    Newhall never delivered any stock to Grif-
fiths, or in fact offered any to him.    Mr. Newhall testified upon
cross-examination:    " I suppose I bought stocks on a margin
for him (Griffiths), as he never paid me in full for stock, and I
never delivered them."

The understanding was that Mr. Newhall should hold the
bond and mortgage until such time as there should be a settle-
ment between Newhall and Griffiths, and Griffiths should pay
whatever he might have lost.    However, in June, 1880, Mr.
Newhall representing that he was in need of money, and wish-
ing to raise some on the mortgage, requested Mr. Griffiths to
consent to its being assigned.    Mr. Griffiths desiring to assist
Mr. Newhall in his difficulties, executed and delivered to John
V. Sears a declaration of no set-off, in which his mother and
sister joined him, on June 8th, 1880.    At the date of the as-
signment there was but about $1,600 which Griffiths had lost
in his stock speculations.

The bond was entered of record as belonging to Sears, April
19th, 1881.    The property described in the mortgage was sold
at sheriff's sale, October 3d, 1881, to Harry F. Newhall, for
$400, subject to a mortgage of $3,000, and on November 11th,
1881, the judgment was marked to the use of Harry F. New-
hall.    Mr. Sears never owned any interest in the bond and
mortgage.

[Griffiths v. Sears, to use of Perot.]

On October 18th, 1884, a *sci. fa.* was issued to revive.

October 27th, 1884, rule was taken to open or vacate judgment against Elijah E. Griffiths' proceedings to stay.

October 8th, 1884, Newhall agreed to sell the judgment, amounting with interest to $1,976, to E. J. Records, Records agreeing to pay for the same $1,000 within thirty days, and paid $100 on account on the date of the agreement of the sale, Newhall guaranteeing the full amount of $1,976 was due, and the defendants had no " set-off " to the same.

Mr. Records did not know on October 8th, 1884, the day he agreed to buy the judgment from Newhall and paid $100 on account, that Griffiths had any defence, or the nature of the transaction on account of which it was given. He, however, had full knowledge prior to the time he paid Newhall the balance of the purchase money, namely, $900.

On October 28th, 1884, Records sold the judgment to T. Morris Perot.

Mr. Perot did not know on October 28th, 1884, the day he bought the judgment from Records, the nature of the transaction by which the judgment was obtained, or that Griffiths had taken a rule to open the judgment on the day prior, namely, October 27th, 1884. He drew his check for $1,400 to W. H. Brown, in payment for the same, and gave it to Records. In the course of a few days Mr. Brown notified Mr. Perot that the rule had been taken, and said he would hold the check until the rule was disposed of. After the rule was discharged Mr. Brown paid $900, the balance due, to Mr. Newhall, and gave the balance to Mr. Records.

Upon the trial of the case, the plaintiff offered to prove knowledge by Records and Perot of the existence of the declaration of no set-off from Griffiths to Sears prior to the purchase of the judgment by Records and Perot.

Defendant objected, but the objection was overruled and exception allowed. (First assignment of error.)

In the general charge the court instructed the jury, *inter alia,* as follows :

[While Newhall could not have recovered, as the transaction was a gambling one, still, if the jury found Records and Perot were *bona fide* purchasers, without notice, the defendant was precluded from setting up a defence as against them.] (Second assignment of error.) [That if the jury found that Records was a *bona fide* purchaser, without notice, and that he paid $100 October 8th, 1884, on account of the purchase of the judgment, and the balance, $900, after he had notice, that he took the judgment freed from any equities which the defendant might have had.] (Third assignment of error.) [If the jury found Perot was a *bona fide* purchaser, without no-

tice, and gave his check in payment for the same to Records, drawn October 28th, 1884, to William H. Brown, which was held by Mr. Brown (with the knowledge of Mr. Perot, who was notified of the proceedings), until after the rule to open judgment was discharged and then cashed, that it would not defeat his (Perot's) equities.] (Fourth assignment of error.)

Verdict for the plaintiff in the sum of $2,376.57 and thereupon judgment, whereupon the defendant took this writ, assigning for error the admission of evidence and those portions of the charge included within brackets as above set out.

*James Watts Mercur* (*Elijah E. Griffiths* with him), for plaintiff in error.—It being admitted that the transaction between Newhall and Griffiths was one of gambling, it is settled that Newhall could not recover.

Transactions in stocks by way of margin and settlement of differences and payment of the gain or loss without any intention to deliver, are mere wagers, which the law will not enforce : Bruas Appeal, 55 Pa. St., 294 ; Smith *v.* Bouvier, 70 Id., 325 ; Fareira *v.* Gabell, 89 Id., 88 ; Worth *v.* Phillips, Id., 250 ; Gheen, Morgan & Co. *v.* Johnson, 90 Id., 38 ; Ruchizry *v.* De Haven, 97 Id., 202 ; Dickson, Executor, *v.* Thomas, Id., 278 ; Griffiths' Appeal, 16 W. N. C., 249.

The only question in this case, then, is whether Newhall's assignees stand in a different position, or have any greater equities than himself.

This being a gambling contract it is void *ab initio.*

Gambling contracts are void, and every contract, note, bill, bond, judgment, mortgage, or other security whatever, given for security or satisfaction of the same, shall be utterly void and of no effect : Act of 22d of April, 1794, Purd., 728, § 8.

Such note is void even in the hands of an innocent holder for value : Unger *v.* Boas, 13 Pa. St., 601.

The declaration of no set-off from Griffiths to Sears does not preclude Griffiths from setting up a defence as against Records or Perot. In order that a declaration of no set-off may operate as an estoppel it must be made to him who acts upon it, who has reason to rely upon it, and who is thereby induced to alter his condition upon the faith of it : Weaver *v.* Lynch, 25 Pa. St., 449 ; Robertson *v.* Hay, 91 Id., 242 ; Affirmed in Griffiths' Appeal, 16 W. N. C., 249.

*William H. Brown*, for defendant in error.—

1. A declaration of no set-off made known to an innocent purchaser before the sale to him of a judgment, estops all defence to such judgment, as to facts existing at the date of such declaration : Ashton's Appeal, 23 Smith, 153 ; Weaver *v.*

Lynch, 1 Casey, 449; McMillen *v.* Rudy, 16 S. & R., 18; Hutchinson *v.* Gill, 10 Norris, 253.

One having a good defence against his bond, though ignorant of the same, promises to pay it, in confidence whereof another obtains an assignment, the obligor is concluded thereby: Carnes *v.* Field, 2 Yeates, 451; Elliott *v.* Callen, 1 P. & W., 24; Buchanan *v.* Wertz, 5 Watts, 151.

It matters not whether the representation proceeded from ignorance, carelessness or design: Edgar *v.* Kline, 6 Barr, 327.

A defendant cannot give in evidence his own fraud in defence against his own act, whether it be an absolute deed or a mortgage, or a confession of judgment: Gill *v.* Henry, 14 Norris, 388; Sherb *v.* Endies, 3 W. & S., 255: Evans *v.* Dravo, 12 Harris, 62; Hendrickson *v.* Evans, 1 Casey, 441.

Where a loss must fall on one of two innocent persons it shall be borne by him whose act occasioned it: Robinson *v.* Justice, 2 P. & W. 19.

2. Any subsequent assignee of a judgment may avail himself of a declaration of no set-off made to any prior assignee: Judge SHARSWOOD in Burns *v.* Ashton, 4 Brewster, 151; Ashton's Appeal, 23 Smith, 153.

A declaration of no set-off to a mortgage is in effect that the mortgagee shall negotiate the mortgage. It is an acknowledgment that he has received full consideration: Hendrickson *v.* Gill, 10 Norris, 253.

3. The Act of April 22d, 1794, rendering void all obligations given for gaining debts, has no bearing upon transactions in stocks.

4. The law will take cognizance of the rights of equitable plaintiffs, and permit their substitution at any stage of the legal proceedings.

Mr. Justice CLARK delivered the opinion of the court, May 10th, 1886.

The 8th section of the Act of 22d April, 1794 (3 Sm., 181), has no application to this case. The bond in suit was not given for security or satisfaction of moneys lost "in cock fighting, bullet playing, or horse racing, or at or upon any game of address, game of hazard, play or game whatsoever," within the purview or meaning of that act; if it had, it would in the language of that act, have been "utterly void and of none effect:" Unger *v.* Boas, 1 Har., 601. It was given by way of margin, to secure a settlement of differences, in a stock gambling transaction between Newhall and Griffiths; the consideration therefore was void (Elliott for use *v.* Callan, 1 P. & W., 24), and unless Griffiths is precluded from setting up

the truth in defence, the law will not lend its aid to enforce the contract: Griffith's Appeal, 16 W. N. C., 249.

The bond in this case was dated 8th May, 1880, and was accompanied by a mortgage. Newhall having arranged to assign these securities to one John V. Sears, Griffiths, on the 8th June, 1880, delivered to Newhall a formal certificate, in writing, declaring that the defendants had no defence whatever thereto; that the assignment to Sears was made with their full knowledge and consent, and that the whole principal sum of $2,000, with the interest, was then due and unpaid. The assignment to Sears was consummated in September, 1881; it is conceded, however, that Sears was not a purchaser for value; he was the mere nominal holder of the securities for the benefit of Newhall, and never had any title to or interest therein. The bond having been entered in Sears's name, the mortgaged premises were sold upon a *venditioni exponas* issued thereon, and were purchased by Newhall, to whom Sears afterwards re-assigned the judgment. The contest now is upon the balance of the judgment entered on the bond.

On the 8th October, 1884, Newhall agreed in consideration of $1,000 payable in thirty days, to sell and assign the judgment to E. J. Records; one hundred dollars only of the consideration was paid in hand, and, on the 27th October following, a rule was granted to show cause why the judgment should not be opened. On the 28th October, 1884, Records, in consideration of $1,400, to be paid to him, assigned the judgment to T. Morris Perot. Mr. Perot drew his check for $1,400, to the order of W. H. Brown, Mr. Record's attorney; Brown received notice of the rule and held the check until the rule to show cause was discharged by the Common Pleas, when he presented the check and paid over the money. An appeal was taken to the Supreme Court, however, where the decree of the Common Pleas was reversed and the judgment opened.

Mr. Records testifies that at the time of his purchase, on the 8th October, 1884, he had no knowledge whatever of the nature of the transactions between Newhall and Griffiths; that the declaration of no set-off, exhibited to him by Newhall, was the inducement to his purchase, and that on the 28th October, 1884, when he sold to Perot, he had no knowledge of the rule taken on the 27th. Mr. Perot testifies also that at the time of the transfer to him he was informed that the declaration of no set-off existed; that he had no knowledge either of the original consideration of the bond, or of the entry of the rule, that he gave his check to Mr. Brown for the $1,400,

on the 28th October, 1884, and that a few days after that, he was first informed of the rule.

It is contended, on part of the defendant in error, that Records was a *bona fide* purchaser of the judgment for value, and that as such he is protected by the declaration of no set-off, which was exhibited to him at the time of his purchase. As we said in Griffith's Appeal, 16 W. N. C., 249, in order that a declaration of no set-off may operate as an estoppel, it must be made to him who acts upon it, who has reason to rely upon it, and who is thereby induced to alter his condition upon the faith of it. By this it was not meant, of course, that the declaration must be renewed at each successive assignment; the protection which it affords is not confined to the immediate assignee, to whom, or for whose security it was made; any subsequent assignee claiming under him may avail himself of it: Ashton's Appeal, 23 P. F. S., 153. Such declarations operate in favor of all those whose conduct it may fairly be supposed they were intended to influence; but strangers, casually hearing of them, cannot, by acting upon them, preclude the party from showing the truth.

The certificate which Griffiths gave, although made in contemplation of an assignment to Sears, was in the most general terms, and as in the case of Hutchinson v. Gill, 10 Norris, 253, was, in effect, an agreement that the mortgage might be negotiated. The purpose of the certificate was to make the mortgage an available means of raising money, by the sale of it, and Sears was the medium through which that was to be effected. There is no suggestion of fraud in obtaining the certificate, or that the certificate was given any greater effect than was intended by the parties.

But, in order that the declaration of an obligor may operate as an estoppel, in favor of an assignee of his bond, the latter must show that he or some prior assignee, was a *bona fide* purchaser for value upon the face of it: Weaver v. Lynch, 25 Penn. St., 449; Ashton's Appeal, 73 Penn. St., 153. An assignee, of a bond, with notice of the illegality of the contract, which forms the consideration, will not be protected by a declaration of no set-off. Duquesne Bank's Appeal, 74 Penn. St., 426. "The ground of this equity," as this court said in Edgar v. Kline, 6 Barr, 327, "is the loss which must fall upon an innocent party; and it is incumbent upon him who would have advantage of it, to show that he paid or gave value for the chose in action he seeks to recover, for without this no loss to him can happen. Where this has not been done, he (the assignee) is a bare donee, with no other rights than those which appertained to the original holder of the security assigned, and

2 AMERMAN—34

[Griffiths *v.* Sears, to use of Perot.]

of course open to every defence which might have been made available against him."

But not only must there be in fact a valuable consideration for the assignments, but that consideration must have been actually paid before notice of the adverse and prior right; where part of the price only has been paid before notice, the purchaser is entitled only to the position and protection of a *bona fide* purchaser *pro tanto*. Pomeroy's Eq., sec. 751. Therefore a purchase of a trust estate, without notice of the trust, was held to be protected only to the extent of his payments made before notice: Beck *v.* Urich, 1 Har., 636. So in Juvenal *v* Jackson, 2 Har., 519, where an assignee of a ground rent received notice from the purchaser of the land subject to the ground rent, of an equitable defence to the payment of the rent, after he had made partial payments to the vendor, but before payment of the whole purchase money, the assignee was held to be affected by the notice, and this court said, if he had paid the whole purchase money, when notice was received, he would have been protected for the whole; if he had paid part only, he would have been protected for so much, and if he had paid nothing, he would be protected for nothing. The principle is one of general application, and governs alike in the transfer of property and in the assignment of choses in action.

Nor is it sufficient that the consideration has been secured by contract, bond, or mortgage; equity will protect the purchaser against the payment of it; he may thoroughly protect himself, although he has accepted the deed or assignment, and given his bonds, and must therefore be considered a volunteer so far as he has not paid the purchase money: Union Canal Company *v.* Young, 1 Wh., 431; Rodgers *v.* Hall, 4 Watts, 362; Hoffman *v.* Strohecker, 9 Watts, 183; Wilson *v.* Howser, 2 Jones, 116.

It is admitted that Records only paid $100 in hand, and that before payment of the balance, he had full notice of the proceedings to open the judgment, upon the express ground, that the consideration of the bond was illegal and void. Excepting as to the $100, therefore he must be treated as a volunteer, he is not entitled to the protection of a *bona fide* purchaser, as to the residue. What may appear as to the $100, in another trial, we do not know, we speak of the case as it is now presented.

The rule to open the judgment, was entered in the Common Pleas as we have said on the 27th October, 1884; on that day, therefore, notice was spread upon the record of the judgment itself, which was the subject of the sale; not only so, but a written notice of the fact was given to the attorney of record for Mr. Newhall, then the actual owner of the judgment.

How does the case stand as to Mr. Perot? The purchaser of a judgment is ordinarily charged with the inspection of the record of that judgment, and is therefore, in general, affected with notice of any rights which it plainly discloses. Therefore it has been repeatedly held, if an assignee of a judgment fail to have his assignment noted upon the record, he will be postponed to a subsequent assignee for value, without notice; but if the first assignment be noted, the subsequent assignee will be affected with notice of the fact: Fisher v. Knox, 1 Harris, 622; Campbell's Appeal, 5 Casey, 401. For says Chief Justice GIBSON in the case first cited : " Though no law requires such an assignment to be docketed, the practice to mark the judgment to the use of the assignee is universal, and it ought to have been pursued here; for no prudent purchaser of a judgment invests his money in it before the record has been inspected. From what else could he derive information? He has nothing for it but the honor of the assignor ; and any one who leaves it in the power of another to deceive may be said to collude with him beforehand."

If Mr. Perot had searched the record of this judgment, on the 28th October, 1884, he would have found full notice of the defendant's alleged defence, as set forth in the petition, then on file and noted on the record. If it be said that the certificate of no set-off dispensed with this duty, it may be replied, that Perot did not even see the certificate ; he seems to have relied wholly upon the words and warranty of Records ; indeed it does not appear that the certificate was the inducement to his purchase.

But even if there was no duty on the part of Perot to inspect the record of the judgment, under the special circumstances of this case, we are of opinion, that the delivery of the check cannot be considered actual payment of the consideration. The application to open, as we have said, was made and noted upon the record on the 27th October, 1884, and on the next day he gave his check to Brown. He was afterwards informed by Brown that a defence had been taken against payment of the judgment, on the express ground of the illegality of the consideration. He took no steps to stop payment of the check, he made no request that the check be returned ; instead of that, he agreed that Brown might hold the check until the rule was discharged, and that it might then be presented for payment. Brown did exactly as he agreed; the rule was discharged and the check was presented and paid. The check might have been, but in fact was not negotiated. He might have stopped the payment, or had the negotiation of it enjoined, but did neither, it was presented and paid with his approval.

Under the admitted facts of the case, neither Records nor Perot, excepting as to the $100, paid in hand, can in the law be regarded as purchasers for value without notice.

The judgment is therefore reversed, and a *venire facias de novo* awarded.