## Howie *v.* Lewis.

*Opening judgment—Forged promissory note—Review of discretion—Burden of proof.*

The maker of a judgment note, which concluded with these words, "this note shall be subject to the same rules governing commercial paper as to equities," signed said note for $200, leaving blank spaces in which the payee could and did insert the word forty and figure 4 without any intrinsic evidence of the note having been altered. *Held,* that the burden was upon the holder to show that it was a bona fide holder for value before maturity, and that the appellate court will not revise the discretion of the lower court in opening a judgment entered upon such by warrant of attorney.

*Promissory note—Nonnegotiable paper—Equities of maker and holder.*

The assignee of nonnegotiable paper takes it subject to the equities existing between the original parties, but the right of the maker of such paper to assert those equities may be defeated by superior equities in the holder.

*Negotiable paper—Equities—Fraud—Opening judgment.*

The addition to a judgment note of the words "this note shall be subject to the same rules governing commercial paper as to equities" while it does not make the note negotiable paper, invests it with that one attribute of commercial paper. It is a waiver by the defendant of the right to inquire into the adequacy of the consideration, or the fairness of the original transaction, and invests a purchaser for value with a counter equity superior to that residing in the maker of the note.

Fraud being established on petition to open a judgment confessed the burden of proof is shifted on the holder, and the appellate court will not interfere with the exercise of the discretion of the common pleas in opening the judgment.

*Banks and banking—Duty of maker of commercial paper—Supine negligence—Fraud—Shifting burden of proof.*

It is the duty of a maker of a note to guard not only himself but the public against fraud and alterations by refusing to sign paper intended to be negotiated, made in such form as to admit of fraudulent practices upon them with ease and without ready detection.

By delivering complete a note containing a clause which clearly implies a covenant that in the hands of a bona fide holder for value it shall not be subject to equitable defenses between the original parties, and by leaving the note blank or with space for the payee to insert a larger amount, which was subsequently inserted, the maker was guilty of supine negligence which invited fraud, and when an innocent party, relying upon the genuineness of the note, parts with property upon the faith of it, the maker will be liable. The establishment of forgery by the payee shifts upon the holder the burden of proving the valuable consideration parted with by him.

Argued Jan. 16, 1900. Appeal, No. 45, Jan. T., 1900, by N. N. Betts, in suit of John Howie, now to the use of N. N. Betts, cashier, against Evan Lewis, from order of C. P. Bradford Co., May T., 1899, No. 377, making absolute rule to open judgment in a feigned issue. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER, W. D. PORTER and MITCHELL, JJ. Affirmed. Opinion by W. D. PORTER, J.

Rule to open judgment. Before DUNHAM, P. J., of the 44th judicial district, specially presiding.

It appears from the record that judgment was opened on the note on the following page:

On the petition of Evan Lewis, defendant, the court granted a rule on plaintiff to show cause why judgment should not be opened and defendant let into a defense.

Other material facts appear in the opinion of the court.

The court made absolute rule to open the judgment and directed an issue to be framed wherein N. N. Betts, cashier, use, is plaintiff and Evan Lewis is defendant, in which issue the note filed in this case shall stand as plaintiff's statement or declaration and the plea of defendant shall be non assumpsit with leave to give special matter of the alterations of the note in evidence for the purpose of determining the controversy. Plaintiff appealed.

*Error assigned* was in making absolute rule to open judgment and directing an issue to be framed.

Towanda, Pa., April 30, 1898.

Ten days after date, for value received, I, or we,

promise to pay     John Howie     or bearer, $4200.00

Forty two hundred Dollars,

No.     Due July 10

at the FIRST NATIONAL BANK OF TOWANDA, without defalcation or stay of execution; and I, or we, hereby authorize any Prothonotary or attorney of any Court of Record to appear and confess judgment for the above sum, with costs, and five per cent. added as attorney's commission for collection, waiving the benefit of all laws exempting property from levy and sale on execution, and the right of inquisition on real estate, and do further agree that this note shall be subject to the same rules governing commercial paper, as to equities.

Jas. Lewis [SEAL]

[SEAL]

232, (1900).]                    Arguments.

*Rodney A. Mercur*, with him *L. M. Hall*, for appellant.—Can the defendant defend upon the ground there was a want of consideration in the note, or in other words, because he was an accommodation maker? Appleton v. Donaldson, 3 Pa. 381; Lord v. Ocean Bank, 20 Pa. 384; Bank v. Dunn, 151 Pa. 228; Smith v. Hine, 179 Pa. 260.

Can the defendant defend upon the ground of alleged fraud upon the part of John Howie as against the use plaintiff?

No alterations whatever are apparent on the face of the note.

The rule in this state is rigid that where one by his acts or silence or negligence, misleads another or affects a transaction whereby an innocent party suffers, the blamable party must bear the loss: Garrard v. Haddan, 67 Pa. 82; Simpson v. Boyard, 74 Pa. 351; Zimmerman v. Rote, 75 Pa. 188; Brown v. Reed, 79 Pa. 370.

In McSparran v. Neeley, 91 Pa. 17, both Garrard v. Haddan and Zimmerman v. Rote were followed.

When one signs a promissory note in blank either as to time or amount, he is bound to know that the payee may supply one or both: Hepler v. Savings Bank, 97 Pa. 420; Byles on Bills (5th Am. ed.), 167, note.

And in Wiley v. Moor, 17 S. & R. 438, the same rule is applied to a bond: per Justice GORDON in Wessell v. Glenn, 108 Pa. 104.

The note contains this agreement, to wit: " And do further agree that this note shall be subject to the same rules governing commercial paper as to equities."

This clause is one therefore the defendant had the right to make, and it went into the note as part of the consideration, and just as much so as the waiving of the exemption and other clauses, which he could and did waive: Bowman v. Smiley, 31 Pa. 225.

If any authority is needed to show what the words " commercial paper " mean, we refer to the following cases: Bills of exchange and promissory notes are commercial paper in the strictest sense: R. R. Co. v. Nat. Bank, 102 U. S. 14; In re Sykes, 5 Biss. (U. S.) 114.

The defendant is presumed to have knowledge of the contents of the note he signed: Greenfield's Est., 14 Pa. 489.

This case has been followed in Penna. R. Co. v. Shay, 82 Pa.

198; Insurance Co. v. Fromm, 100 Pa. 347; Lewis v. Dunlap, 5 Pa. Superior Ct. 625, and the principle applied in Adams v. Bachert, 83 Pa. 524, and Weist v. Paul, 1 Leg. Rec. 205.

For a conspicuous and recent case see Lett v. Kunkle, 178 Pa. 273.

A man who signs a judgment note without reading it or having it read is guilty of supine negligence, and is not entitled to relief either at equity or law: Friedman v. Lindenmuth, 1 Leg. Rec. 82; Mattes v. Mock, 2 Leg. Rec. 141; Building Association v. Morris, 2 Kulp, 323; Same v. Lyons, 2 Kulp, 409.

What evidence was required to show fraud to set aside the note?

To set aside a solemn instrument between parties and convert it into an obligation of different purport, on the ground of fraud or mistake, the evidence of it should be clear, precise and indubitable, as laid down in a host of cases from Stine v. Sherk, 1 W. & S. 195, to Hoffman v. R. R. Co., 157 Pa. 174.

All these cases as well as the celebrated one of Phillips v. Meily, 106 Pa. 536, hold that where the evidence is insufficient to reform the contract, the question should not be submitted to a jury: Honesdale Glass Co. v. Storms, 125 Pa. 268.

A judgment entered by confession under a warrant of attorney should not be opened nor the evidence submitted to the jury, unless the written instrument be overcome by testimony which if believed should move a chancellor to decree that the note was void, or should be reformed because of forgery, fraud or mistake: English's Appeal, 119 Pa. 533; Bank's Appeal, 124 Pa. 337.

Equitable relief may be denied upon the allegation of a defense purely legal, as forgery, as was done in Earley's Appeal, 90 Pa. 321.

The burden of overcoming the responsive answer of the use plaintiff was cast on the defendant: Oil Co. v. Shear, 161 Pa. 508; Crawford v. Rath, 4 Pa. Superior Ct. 612.

*W. J. Young,* for appellee.—We insist that fraud in the procuring and issuing of the note being averred and actually proved, it is sufficient " to require the plaintiff to show that he took the note before maturity, and paid value for it: " Investment Co. v. Russel, 148 Pa. 496.

Any misstatement made or fraud practiced by the payee in procuring the note, will render the note void, certainly as to him: County of Schuylkill v. Copley, 67 Pa. 386.

It is said: " But in order to create this equitable estoppel, it is necessary for the assignee to show, not only that he took the assignment, but that he paid a valuable consideration for it." If the law were otherwise, an ignorant obligor might easily be trapped into an admission, and a sham assignment might be made for the very purpose of keeping out an honest defense: Weaver v. Lynch, 25 Pa. 449; Griffith v. Sears, 112 Pa. 523.

As to the ground of the plaintiff's equity to take the note clear of any defense, we quote from an opinion of our Supreme Court:

" It is the loss that would otherwise fall upon an innocent party. It is incumbent on him who would have advantage of it, to show he paid or gave value for the chose in action he seeks to recover, for without this no loss to him can happen. Where this has not been done he is a bare donee, with no other rights than those which appertained to the original holder of the security assigned, and of course, open to every defense which might have been available against him : " Edgar v. Kline, 6 Pa. 327 ; Investment Co. v. Russel, 148 Pa. 496.

Mere possession of nonnegotiable paper implies no consideration and confers no right of action in the holder's name: Bircleback v. Wilkins, 22 Pa. 26.


OPINION BY W. D. PORTER, J., July 26, 1900:

The note upon which this judgment was confessed was in all respects regular and contained upon its face nothing to excite suspicion that it had been in any way altered or changed. It was not negotiable paper, but it closed with these words : " And I do further agree that this note shall be subject to the same rules governing commercial paper, as to equities." It is admitted that the signature to this note is the genuine signature of the defendant. The defendant, in his petition for a rule to open the judgment, sets forth that the note upon which the judgment was entered was for $4,200, and that he had never given John Howie a note for $4,200; that he had signed notes payable to John Howie for sums not exceeding at any one time $200 or $300, and though he, the deponent, had not now a clear

recollection of the signing of the note in suit, yet he averred that he never knowingly signed a note payable to John Howie for $4,200; that he, deponent, was a man past seventy-five years of age and unable to read handwriting, and when he had signed notes for John Howie he always relied upon the statement of said Howie for the amount of the note, and the terms of payment. "That the note in suit was given upon the express statement of John Howie that it was for an amount not to exceed $300, and that he, the said Howie, would not call upon him for payment. The said note was entirely without consideration, this deponent never having received any consideration whatever therefor." The court granted a rule to show cause why the judgment should not be opened, and the equitable plaintiff filed an answer, in which it was set forth: " That said bank is a holder for value of the note upon which judgment is entered in this case, and became such holder before maturity of the same; that said respondent is well acquainted with the handwriting of the maker of said note, the said Evan Lewis, the defendant in this case, and has been so acquainted for several years; that the signature of Evan Lewis attached to said note is in the handwriting of said Evan Lewis, and all the rest of the written portion of the face of said note is in the handwriting of said John Howie; that said respondent alleges that the said note does not bear any alterations, interlineations or changes of any kind, either in date, time of maturity, or amounts, whether expressed in writing or in figures, or in any portion of the written or printed portion thereof. Said respondent alleges that upon inspection the said note shows clearly that it was given for the sum of $4,200 and not for $300, and that it was impossible to have raised the said note from said lesser sum to said greater sum without that fact plainly appearing thereon." The answer further denies knowledge of the inability of the defendant to read writing. Testimony was taken on behalf of the defendant, and John Howie, the payee of the note, testified that the note was written upon a printed form and that when Lewis signed the note the blank in which the amount of the note was intended to be written was left blank, and the place where the figures indicating the amount of the note were to be placed had filled in the figures " 200; " that after Lewis had signed the note, he (Howie) took it away,

placed a figure "4" in front of the "200" and wrote the words "forty-two hundred" in the space which had been left entirely blank in front of the printed word "dollars." Howie further testified that at the time Lewis signed the note he (Howie) told him the note was for $200. The equitable plaintiff, relying upon the answer filed, took no testimony. The learned court below opened the judgment and ordered an issue, which action is now assigned for error. The defendant moved to open this judgment upon two distinct grounds : first, that the note upon which it was entered was without consideration ; and second, the fraud of Howie in procuring from him a note for $4,200, representing it to be a note of not more than $300. The right of this defendant to have this judgment opened upon the ground of want of consideration may well be questioned. It is true that the assignee of nonnegotiable paper takes it subject to the equities existing between the original parties, but the right of the maker of such paper to assert those equities may be defeated by superior equities in the holder.

In the present case the express covenant upon the face of the note, which the defendant sent out over his signature, that it should be subject to the same rules governing commercial paper, as to equities, must be presumed to have been intended by the parties for some purpose. So long as the note was held by the payee this clause meant nothing, and the parties must be presumed to have known that it was only when the note passed into the hands of a purchaser for value before maturity that this clause could become of any force. So long as Howie held the note the equities between him and the defendant would have been the same with regard to this note as if it had been commercial paper. But without this clause in question, the equities of the defendant as against an assignee for value would have been entirely different. It was, therefore, manifest upon the face of this instrument that it was the intention of the parties that it should be negotiated, and they made that intention a part of their contract. It was a declaration by Lewis that Howie was authorized to negotiate the note, and an agreement upon his own part that any purchaser for value before maturity should take the note discharged of any equities existing between the original parties. It did not make this note negotiable paper, but it simply invested it with that

one attribute of commercial paper. This was a waiver by the defendant of the right to inquire into the adequacy of the consideration, or the fairness of the original transaction, and invested a purchaser for value with a counter equity, which was superior to that residing in the maker of the note. The ground upon which the maker of nonnegotiable paper, who has declared that he has no defense, is estopped from afterwards alleging want of consideration in the original transaction as against a purchaser for value, to whom he had made the representation, is that he has authorized the negotiation of the instrument and induced another to part with his money upon the faith of his representation. Where the maker of such an instrument executes at the same time and delivers to the payee, mortgagee or obligee, a writing certifying that he has no defense or defalcation, it is in effect an agreement that the payee or mortgagee shall negotiate the security. It is an acknowledgment that he has received full consideration, and it would be in the highest degree inequitable to allow such maker, mortgagor or obligor to set up that there was fraud in obtaining the note, mortgage or bond. The efficacy of all certificates of no defense, or declarations of that character, is based upon the principle that he who has induced another to invest money upon the faith of his declaration of the validity of the security shall not afterwards be heard to impeach such security: Hutchison v. Gill, 91 Pa. 253; Edgar v. Kline, 6 Pa. 327; Griffiths v. Sears, 112 Pa. 523. We are of opinion that the defendant in this case was not entitled to have this judgment opened upon the ground of want of consideration in the original transaction.

The second ground upon which the application to open was based, namely, that the defendant was illiterate, or unable to read handwriting, and that Howie had fraudulently induced him to sign a note for $4,200, representing that it was for an amount not to exceed $300, and that he, said Howie, would not call upon him for payment, seems to have been considerably shifted by the testimony taken under the rule. In his petition for a rule to open the judgment defendant said unqualifiedly: " Deponent is a man past seventy-five years of age, and is unable to read handwriting." When he came to testify in support of the rule he says, with regard to this note: " I think there

must have been some writing in that note beside the 300, but I didn't read it. Q. What did Howie say as to the amount of it? A. Howie said this note was for $300, and it was due in three days. I can't read handwriting readily. Q. What do you mean by 'readily'? A. I mean right off; I would have to spell it out." On cross-examination the note was given to him and he was asked: "Q. Can you tell any portion of what was written upon the note when you signed your name thereto? A. No, sir. Q. Can you read the date of the note? A. It is June 30, 1898. Q. Can you read the length of time it was to run? A. Ten days. Q. Can you read the name of the payee? A. It is John Howie. Q. Can you read the amount of the note in writing there? A. I should say $4,200." On the re-direct examination: "Q. You said that you could not tell the amount written in as you did not read the note. Was there some amount written in? A. Yes, sir; Howie said it was 300, and the first note 200." The testimony taken by the defendant under the rule establishes nothing but this: At the time of the execution of the note the figures 200 were placed in the blank intended for the figures representing the amount of the note, and those figures were placed in such a position as to permit of the figure "4" being placed in front of them. The space in which the amount for which the note was given ought to have been written was left blank, and the defendant signed the note while it was in this condition, without reading it, and delivered it to Howie, the payee. The testimony of the defendant clearly shows that he could read handwriting, for he did read the handwriting in this very note at the time his testimony was taken. It was, therefore, a case of a note signed by a man who could read, but did not read or attempt to read. Howie received the note in this condition, filled up the blanks, making a note for $4,200, which, upon its face, had nothing to challenge suspicion. This note, whether given as an accommodation note or not, containing the clause which we have held expressly authorized its negotiation, without any limitation whatever on that power, was, before maturity, assigned to the equitable plaintiff, the bank, which had no notice of the fraudulent alteration. If there had been no alteration in the note, the defendant would have been bound to pay the bank: Altoona Bank v. Dunn, 151 Pa. 228. When the defendant signed

the note containing the clause which clearly implied a covenant that it should be negotiated, and in the hands of a bona fide holder for value not subject to equitable defenses between the original parties, leaving the amount for which the note was given blank, he was guilty of supine negligence, which invited fraud. His failure to read the note does not relieve him from liability: Lett v. Kunkle & Wilson, 178 Pa. 273. By delivering the note in blank to Howie he made the latter his agent to complete the note, and if, because of Howie's fraud in filling the note in for a larger amount than agreed upon, an innocent party was made to rely upon the genuineness of the note and parted with property upon the faith of it, the defendant would be liable: Simpson v. Bovard, 74 Pa. 351; Garrard v. Haddan, 67 Pa. 82. It is the duty of the maker of a note to guard not only himself, but the public, against frauds and alterations by refusing to sign paper, intended to be negotiated, made in such a form as to admit of fraudulent practices upon them, with ease and without ready detection: Zimmerman v. Rote, 75 Pa. 188. It is true that most of the cases above referred to were actions upon negotiable instruments, but the doctrine upon which the decisions are based is but the elaboration of a great equitable principle which applies to all instruments, whether under seal or negotiable. "If one by his acts, or silence, or negligence, misleads another, or in any manner effects a transaction whereby an innocent person suffers loss, the blamable party must bear it:" Story's Equity, 386–387. "Where one of two innocent persons must suffer loss by reason of the fraud or deceit of another, the loss should fall upon him by whose act or omission the wrongdoer has been enabled to commit the fraud:" Pennsylvania Railroad Company's Appeal, 86 Pa. 80; O'Connor v. Clark, 170 Pa. 318; Moore v. Metropolitan National Bank, 55 N. Y. 41; McNeil v. Tenth National Bank, 46 N. Y. 325. We are of opinion that upon the testimony produced by the defendant in the court below he was liable upon this note, if it had passed into the hands of a bona fide holder for a valuable consideration before maturity.

It is, however, clear that the testimony produced in the court below was sufficient to defeat a recovery upon this note by any person other than a purchaser for a valuable consideration before maturity. There can be no question that Howie perpe-

trated a fraud upon the defendant at the time the note was procured, and that is sufficient to require the equitable plaintiff to show that it took the note before maturity, and paid value for it. This principle applies whether the plaintiff relies upon the equities of the holder of negotiable paper, or the declarations of a maker of nonnegotiable paper that he has no defense thereto. In the former case the plaintiff must put himself in the position of a bona fide holder of a negotiable instrument before maturity. In the latter, the defendant is held to be estopped by his declarations upon the equitable ground that otherwise a loss would fall upon an innocent party, and it is incumbent upon him who would have advantage of it to show he paid or gave value for the chose in action upon which he seeks to recover, for without this no loss to him can happen. It is no hardship to the plaintiff to require proof of consideration. Should he succeed in this, the defense set up amounts to nothing. If he should not succeed, the facts averred in the affidavit, if proved to the satisfaction of a jury, would be a good defense : Investment Company v. Russel, 148 Pa. 496; Edgar v. Kline, supra; Griffiths v. Sears, supra. The allegation in the answer of the equitable plaintiff upon this point is most meager, namely : " That said bank is a holder for value of the note upon which judgment is entered in this case, and became such holder before the maturity of the same." From anything that appears here, the bank might have taken this note as collateral security for a pre-existing debt. We are of opinion that the petition which this answer was intended to meet required something more specific than this vague allegation. If the bank had paid money for this note, or exchanged other securities or property for it, the facts ought to have been clearly stated in its answer. The petition of the defendant and testimony submitted thereunder accomplish nothing more than to place upon this equitable plaintiff the burden of showing that it was a bona fide holder for value before maturity, but upon that single point we are of opinion that the testimony was sufficient. The plaintiff was, under such circumstances, required to be clear and specific in its answer. The exercise of jurisdiction to open judgments entered upon warrants of attorney is within the sound discretion of the court, and in such cases the court may judge of the credibility of the witnesses. We are not satisfied that there

was an abuse of discretion by the learned court below in opening this judgment.

The Supreme Court have, since the above opinion was written, in the case of Howie v. Lewis, 196 Pa. 558, passed upon the questions raised by this record.

Judgment affirmed.