## Altoona Second National Bank *v.* Dunn, Appellant.
### Gardner *v.* D. A. Dunn, Appellant.
### Gardner *v.* Agnes Dunn, Appellant.
### Gardner *v.* Annie Dunn, Appellant.

*Judgment note—Restriction on use—Antecedent debt.*

The payee of an accommodation note having received it with restriction that he use it to obtain a loan, cannot pledge it for an antecedent debt.

It seems that an accommodation judgment note under seal, when given without restriction, may be pledged to secure an antecedent debt of the person for whose accommodation the note was given.

Argued April 19, 1892.   Appeals, Nos. 150, 151, 152, 153, July T., 1891, by defendants, Maggie Dunn, D. A. Dunn, Agnes Dunn and Annie Dunn from orders of C. P. Blair Co., Oct. T., 1887, Nos. 492, 542, 543 and 544, refusing to open the several judgments in the respective cases.   Before PAXSON, C. J., GREEN, WILLIAMS, MITCHELL and HEYDRICK, JJ.

Rules to open judgments.

The facts appear in the opinion of the court below, by DEAN, P. J.:

"Edward T. Dunn, son, and Ellen Dunn, mother, had borrowed from the Second National Bank, of Altoona, this plaintiff, at different times, money aggregating in amount ten thousand dollars; the borrowers became involved in real estate and building speculations in Altoona; the bank became alarmed and called for security on its loans; Edward T. Dunn agreed to obtain judgments from his sisters and brother as additional sureties to the amount of ten thousand dollars; he did so; the bank entered up the judgments; the defendants ask that they be opened because of misrepresentations in obtaining and because they were without consideration.

"Edward T. Dunn, the original debtor, testifies that H. A. Gardner, cashier of the bank, asked him to give additional security, judgments of his sisters and brother; that if this were done then the bank would advance him three or four thousand more; on this promise he agreed to do so; went to his sisters and brother; obtained from Annie, Agnes and Daniel, three judgment notes, each in the sum of $3,333.33, making altogether $10,000.   Maggie signed a joint judgment note with her mother and Edward for two thousand.   He further testified, that to obtain these judgment notes from his sisters and brother he represented to them that, if they signed them, the bank would give him three or four thousand dollars more to relieve his pressing necessities; further that, after obtaining the security demanded and delivering the notes to the bank, further loans were refused, and his total insolvency followed, leaving his sisters and brother answerable for the debt.

"This statement of Edward T. Dunn is denied by the testimony of H. A. Gardner, cashier; he says when he learned that Edward T. Dunn and his mother were on the verge of insol-

vency he sent for Edward, and asked him to give further security, on the ground that the bank had been accommodating in the past; and that if such security were given the claim would not be immediately pressed for payment; Edward expressed a willingness to get his sisters and brothers as sureties, and mentioned that already executions had been issued to the amount of four or five hundred dollars and levy laid on his mother's household goods; the bank agreed to pay these off, and did so; as his brother lived at Baltimore and his sisters at Pittsburgh his expenses to go and see them were advanced by the bank; he returned with the three notes, each in the sum of $3,333.33. Maggie lived in Altoona, and she joined her brother and mother in the $10,000 note.

" There is here a direct conflict in the testimony. Edward swears that, as a consideration for his obtaining the additional security, the bank was to advance him three or four thousand dollars more; that his sisters and brother became his sureties because of this promise, believing he would be able to tide over his difficulties and pay his debts finally if at that juncture he could obtain a further loan of three or four thousand dollars. H. A. Gardner, cashier, positively denies making any such promise; he says the motive of Edward to obtain additional security, was gratitude for past favors, further indulgence as to time, and the payment of the executions then pending.

" The testimony of John P. Levan, the president of the bank, Dr. Robert W. Christy, who called upon Dunn, at request of bank, to urge him to give security, and John A. Doyle, Esq., at the time counsel for Dunn, to some extent corroborates that of H. A. Gardner. Nor is there anything in the circumstances surrounding the transaction which makes Dunn's statement more probable on its face than Gardner's.

" Taking, then, the testimony as it stands from the manifest weight of it, a jury ought to find, there was no misrepresentation on the part of Gardner to Dunn to obtain the notes. If there was no misrepresentation, then Dunn and his mother obtained all the advantage promised; the executions then pressing were paid off by the bank, and further time on their ten thousand dollar loan was had; this was sufficient consideration to sustain the promise to pay on the part of each one of the sureties; a positive benefit accruing to the original debtor.

" [The rules to open the judgments in each one of the fi. fa.'s, Nos. 39, 40, 41, June term, 1888, obtained by Agnes, Annie and Daniel Dunn; also, rule in No. 38. fi. fa. to March term, 1888, obtained by Maggie Dunn, are discharged.] " [2]

*Errors assigned* were (1) discharge of rules ; (2) above decree, quoting it; (3–6) discharge of rule in each case.

*John G. Johnson* and *Martin Bell, John D. Blair* with them, for appellants, cited Royer v. Bank, 83 Pa. 248 ; Carpenter v. Bank, 106 Pa. 170 ; Simpson v. Bovard, 74 Pa. 361 ; Weigley v. Conrade, 132 Pa. 151.

*Aug. S. Landis,* with him *Greevy & Patterson* and *Wm. S. Hammond,* for appellees, cited Jenkintown Bank's Ap., 124 Pa. 337 ; Applebee's Ap., 126 Pa. 385 ; Wernet's Ap., 91 Pa. 319 ; Com. v. Titman, 1 Adv. R. 497.

OPINION BY MR. JUSTICE HEYDRICK, October 3, 1892.

Conceding that the learned court below was justified by the evidence in the finding that " there was no misrepresentation on the part of Gardner to obtain the notes," it does not follow that the appellant can be held beyond the amount, if any, which the bank advanced upon her credit. The plaintiff does not claim to have advanced more than about four hundred dollars upon the appellant's credit, and there is some doubt whether that sum was not advanced before the note in controversy was made and without the knowledge, or any promise upon the part of the appellant. While it is quite clear that two of the parties to the note, Edward T. Dunn and Ellen Dunn, were indebted to the bank in the sum of $10,000 for which it held the note of the latter indorsed by the former and that it was pressing for security for this indebtedness, it is not pretended that it accepted the note in suit in payment, or surrendered the note which it already held. The cashier says that when Edward handed it to him he told him that it was not what he had promised, and was not satisfactory, and insisted that he get the signatures of the other heirs of his father to it. And when Edward brought in three other judgment notes for $3,333.33⅓ each, signed by three of his brothers and sisters, the appellants in three other cases argued herewith, it does not appear that all together were accepted in payment of the original debt. On the contrary, Mr. Gardner says : " Some

time after that (the delivery of the last three notes) Mr. Dunn came in with a receipt drawn up, I do not remember the amount of it exactly but substantially it was an acknowledgment on our part that both these three notes and the one given by him a few days before for $10,000 were to secure the note of his mother held by us, and not for $20,000 indebtedness as the face of them would show. It appeared to me to be fair and right, and I signed and delivered it to Mr. Ed. T. Dunn."

The bank, then, upon its own showing, held these notes as collateral security for an antecedent debt, and it did not even give time upon the original debt because the notes were payable one day after date and the evidence shows that that time must have elapsed before they were accepted. It was not, therefore, a bona fide holder for value: Lord v. Ocean Bank, 20 Pa. 384; Lenheim v. Wilmarding, 55 Pa. 73; Pratt's Appeal, 77 Pa. 378; Royer v. Keystone National Bank, 83 Pa. 248; Carpenter v. National Bank of Republic, 106 Pa. 170.

The next question is as to the character of the note. If it were an accommodation note, that is to say commercial paper given without value to enable the party to whom it was given to use it for his own benefit without restriction as to the manner in which it should be used, there is no question that it could have been pledged as collateral security for an antecedent debt. "He who chooses to put himself in the front of a negotiable instrument for the benefit of his friend must abide the consequence and has no more right to complain if his friend accommodates himself by pledging it for an old debt than if he had used it in any other way." Lord v. Ocean Bank, supra. And since accommodation paper, strictly so-called, in the hands of a pledgee for an antecedent debt is open to any defence, except want of consideration, that could be made to it in the hands of an original party, Cummings v. Boyd, 83 Pa. 372; Carpenter v. National Bank of the Republic, supra, it might be difficult to show why a sealed bill given for accommodation and without restriction as to the manner of its use might not be pledged in like manner as a negotiable note. But it is not necessary to decide this point. The note was not signed by the appellant without restriction as to the manner of its use if she can be believed, and if it had been negotiable the present defence would have been available: Royer v. Keystone National

Bank, *supra.* She testified that she signed it to enable her brother to obtain a loan; and in this she was not contradicted, nor did the learned court below find that she was unworthy of belief. The expression of this one purpose was the exclusion of every other, and a restriction upon the manner in which the note should be used. Being under no obligation to either her brother or the bank she could withhold her signature or give it upon her own terms, and because she had the right to impose terms arbitrarily there can be no inquiry as to whether the use that was made of the note was more disadvantageous to her than that stipulated would have been.

For these reasons the decree of the court below is reversed and a procedendo is awarded.

### GARDNER v. D. A. DUNN.

The facts in this case do not differ in any material respect from the facts in Second National Bank of Altoona against Maggie Dunn argued herewith. For the reasons given in the latter case the decree of the court below is reversed and a procedendo awarded.

### GARDNER v. AGNES DUNN.

For the reasons given in the case of Second National Bank of Altoona v. Dunn involving substantially the same questions that are at issue in this case the decree of the court below is reversed and a procedendo awarded.

### GARDNER v. ANNIE DUNN.

For the reasons given in the case of Second National Bank of Altoona v. Maggie Dunn involving substantially the same questions that are at issue in this case the decree of the court below is reversed and a procedendo awarded.