## Shaub *v.* Shaub, Appellant.

*Promissory note—Alteration—Subscribing witness—Attestation after signature of one of the makers.*

Where two or more parties have affixed their names to a writing, and the name of a witness is affixed in the place set apart for that purpose on the paper, without the knowledge or consent of the plaintiff party, it does not necessarily follow that the alteration avoids the instrument.

Where the evidence shows that the subscribing witness intended to certify only to the one of the signatures, that there is no dispute in regard to the signature of the maker, it is competent to inquire into the circumstances of the signing, and where it appears to have been done without fraud or unlawful purpose, the signature of the attesting witness will be regarded as relating to the act which he intended to attest.

Argued Nov. 12, 1918. Appeal, No. 234, Oct. T., 1918, by defendant, from order of C. P. of Lancaster Co., November T., 1917, No. 80, discharging rule to open judgment in case of Willis J. Shaub, now to the use of the Agricultural Trust Co., v. C. Newton Shaub, C. H. Brubaker and Willis J. Shaub. Before ORLADY, P. J., PORTER, HENDERSON, TREXLER and WILLIAMS, JJ. Affirmed.

Assumpsit on promissory note.

Rule to open judgment.

The facts appear in the opinion of HASSLER, J., discharging the rule.

This judgment was entered on November 20, 1917, on a judgment note, dated August 21, 1917. On March 2, 1918, C. Newton Shaub and Willis J. Shaub, two of the defendants, each presented a petition to have the judgment opened, upon which the rules we are about to dispose of were granted. We will first consider the rule granted upon the petition of C. Newton Shaub.

In his petition C. Newton Shaub, who was one of the makers of the judgment note, alleges that he was an ac-

commodation maker of it for the benefit of Willis J. Shaub, one of the defendants, who is named as payee in it. He asks to have the judgment opened for the reason that he signed the note in blank, it having been agreed that C. H. Brubaker, the third defendant, was to fill it up for two hundred dollars, in order to obtain that amount from the Agricultural Trust Company, the plaintiff, for his brother, Willis J. Shaub, to enable him to go into the real estate business with the said Brubaker, and that the said Brubaker fraudulently filled it up for fifteen hundred dollars adding his name as maker, and inserting the name of Willis J. Shaub as payee, who assigned it to the Agricultural Trust Company, and that the said Brubaker received the said sum of fifteen hundred dollars for his own benefit. Upon the argument of this rule, he amended his petition so as to add an additional reason for opening the judgment, which is as follows: And now, to wit, June 17, 1918, petitioner in the above-stated case asks leave of court to amend the petition, to conform with the depositions taken, by adding to paragraph 5 thereof the following: "The name of Frank E. Herr, a subscribing witness to said note, was affixed after the signature of the note by your petitioner, and without his knowledge or consent."

The plaintiff, the Agricultural Trust Company, took the note subject to all the defenses which the petitioner had to it, even though it obtained it for value before maturity, because it is not a negotiable note. It is not negotiable because it contains a confession of judgment to be entered at any time either before or after its maturity. In Milton Bank v. Beaver, 25 Pa. Superior Ct. 494, and Volk v. Shumaker, 229 Pa. 407, it is decided that a provision in a promissory note authorizing a confession of judgment before maturity makes a note nonnegotiable.

We will first consider what effect the affixing of the name of the subscribing witness to the note, after the petitioner C. Newton Shaub had signed it, without his

knowledge and consent, has upon his, the petitioner's liability on the note. It is admitted that the subscribing witness did not see the petitioner sign the note, but affixed his name thereto after he had signed it.

It is well settled, and not questioned by the plaintiff here, that any material alteration of a written instrument after its execution renders it void as against one who has not consented to it. The addition of the name of a witness to the signature of the parties to a written instrument, after its execution by them, in their absence, and without their knowledge and consent, is a material alteration and renders the instrument inadmissible in evidence, thus avoiding it and rendering it unenforceable: Neff v. Horner, 63 Pa. 327; Fisher v. King, 153 Pa. 3; Shiffer v. Mosier, 225 Pa. 552; Swank v. Kauffman, 255 Pa. 316; Everhart v. Fulmer, 58 Pa. Superior Ct. 454.

The affixing of the name of F. E. Herr as a subscribing witness to the note, upon which this judgment was entered, after the same had been signed by C. Newton Shaub was a material alteration of it, and, having been done without his consent, rendered it void as to him unless the circumstances surrounding it took it out of the general rule applicable in such cases. The circumstances are as follows: the note contains the names of two makers, first, C. Newton Shaub, and below it that of C. H. Brubaker. On a line with the word "witness" printed at the end of it, immediately opposite the latter name, Frank E. Herr signed as a witness. He testified as follows: "Q. Did you see C. Newton Shaub sign it? A. No I only witnessed Brubaker's signature. Q. Your signature is as to both makers, but you only saw Brubaker sign? A. Yes, sir. Q. You are sure about that? A. He signed it in the bank, I am pretty sure." It also appeared that the name C. Newton Shaub was on the note when he witnessed Brubaker's signature.

In 2 Corpus Juris, page 1208, Sec. 62, it is stated that the instrument will not be avoided if the attestation ap-

pears to be to all the signatures instead of being confined to a particular one: Richardson v. Mather, 178 Ill. 449, 53 Northwestern 321, affirming 77 Ill. A. 626; Hilton v. Houghton, 35 Maine 143; Foust v. Renno, 8 Pa. 378.

Foust v. Renno, 8 Pa. 378, fully sustains the rule as stated in Corpus Juris. The facts in it are that Renno, one of the obligors, whose name was written in the body of the bond, executed it without subscribing witnesses. Afterwards Miller, the other obligor, executed it in the presence of two witnesses, who subscribed their names in a general attestation clause as though they had witnessed the execution of the bond by both obligors. The court below held that this invalidated the bond, and gave binding instructions to the jury to find a verdict for the defendant. In reversing this, Chief Justice GIBSON, delivering the opinion of the court, says: "In the present (case), the witnesses saw one of the obligors, Miller, sign and seal; and the jury ought to have been instructed to inquire whether the form of the clause of attestation was purposely made general by the contrivance of the obligee, to import an attestation of execution by both obligors, or whether it was done ignorantly and accidentally. If the witnesses subscribed it as it was prepared, without being practiced upon by the obligee, the bond was valid......Where joint obligors sign and seal separately, it is usual to have separate sets of attesting witnesses; and had the scrivener, in this instance, specially noted, as he ought to have done, that the witnesses subscribed to attest the act of Miller alone, there would have been neither doubt nor difficulty, as to the validity of the instrument. The fact of execution by Renno would have been left open to general proof of his handwriting or acknowledgment; and what reasonable objection can he have to let the case stand on that foot as it is? Had the witnesses died or gone beyond the jurisdiction of the court, proof of their handwriting would have been prima facie proof of execution by Renno as well as by Miller; but the fact might have been dis-

proved, if the truth were so, by witnesses to the character of Renno's handwriting, or the presumption from general attestation might have been rebutted by the testimony of the scrivener, or any other person present at the transaction. If Renno could not disprove his signature because it was genuine, there would be no harm done. The day for invalidating deeds for accidental alterations, even in material parts, has long gone by; and had the cause been put to the jury upon the honesty of the case there is no doubt that the verdict would have accorded with the justice of it."

In Beary v. Haines, 4 Wharton 17, it was held that where three persons signed a promissory note, and afterwards one of them acknowledged his signature to a witness, who subscribed his name in the presence of such maker and of the payee without stating that he witnessed only the signature of that maker, that the alteration did not discharge the other two makers from liability. The failure of the witness to state the fact that he only witnessed the signature of one of the makers was an omission and it did not make his act an alteration of the note. In Ogle v. Graham, 2 Pa. 132, where one maker in the presence of one witness and another maker signed in the presence of another witness, although the witnesses signed as though they were witnessing the signature of both makers, it was held that the note was not invalidated.

In two other cases the Supreme Court of this State have decided that circumstances may prevent the application of the rule that a written instrument is rendered void by the addition of subscribing witnesses, after its execution, without the consent of those who signed it. In Marshall v. Gougler, 10 S. & R. 164, the witnesses whose names appeared to the attestation clause of a bond which they had not seen executed, signed there by mistake, it having been their intention to sign as witnesses to the assignment of the bond, which assignment they saw executed. It was held that this did not avoid the

bond. In Fritz v. Commissioners, 17 Pa. 130, Samuel Fritz, one of the obligors in the bond, denied his execution of it. The subscribing witness testified that he had no recollection of Fritz's being present when he signed as a witness, but was asked to and did witness it at the request of the other obligor. It was held that this did not invalidate the bond.

As we have shown, the subscribing witness in the case at bar testified that he only witnessed the signature of Brubaker whom he saw sign the note. It is true that his signature indicated that he saw both makers sign, but this was done ignorantly or accidentally and was a mistake on his part. In his answer that he witnessed both signatures he means that it appears to have that effect, because he explains in the same answer that he only saw Brubaker sign it. There is no evidence that he was led to, or did do this, for the purpose of gaining any advantage for his employer, the plaintiff in this case. In fact, no advantage was gained by it, as it was not necessary to have a subscribing witness to C. Newton Shaub's signature to make him liable on the note. It is true that if Frank E. Herr had died, or gone beyond the jurisdiction of the court, the proof of his signature would have been prima facie evidence of the genuineness of the signature of C. Newton Shaub, but, as is said in Foust v. Renno, supra, the fact might have been disproved, if the truth were so, by witnesses to the character of Shaub's handwriting, or the presumption of general attestation might have been rebutted by any one present at the transaction. If he could not disprove the signature because it was genuine, there would be no harm done, but no such question can possibly arise here, for the reason that the petitioner, both in his petition and in the deposition, admits the genuineness of his signature. We are of the opinion, therefore, that Frank E. Herr's signature to the note, as a witness, under the circumstances did not invalidate the note, on which the judgment was entered.

Nor do we think that the petitioner is entitled to have the judgment opened for the reason assigned in his petition that he signed it in blank, and it was fraudulently filled up and used by Brubaker. This unquestionably would be a defense to the note in the hands of Brubaker, and, while it is well settled that an assignee of a non-negotiable paper, such as this note is, takes it subject to the equities existing between the original parties, the right of the maker to assert this equity may be defeated by superior equities in the holder: Howie v. Lewis, 14 Pa. Superior Ct. 232. In this case we think the holder had superior equities. It is a well-settled principle that where one of two innocent parties must suffer loss, it must be borne by the one whose conduct caused or made possible the loss.

In this case the petitioner executed the note in blank. He thus gave Brubaker the opportunity to fill it up for any amount he saw fit to fill it up for, so that when it was presented to the bank it could have no knowledge but that the petitioner signed it for the amount called for in it. His act, therefore, enabled Brubaker to obtain full value from the plaintiff for it. In Neil v. Neil, 25 Pa. Superior Ct. 605, where a note was signed by a maker in blank under similar circumstances to those in this case, the Superior Court applied the rule, and held that as the maker made it possible for the purchaser of the note to pay its value he, the maker, must sustain the loss. In Simpson's Exc. v. Bovard, 74 Pa. 351, where the circumstances of the execution of the note were very similar to those in this case, the Supreme Court decided that where the maker "clothed A with the apparent authority to fill the note for an amount sufficient for the general purpose, he cannot avoid his liability, to the prejudice of one who took it in good faith, by showing that the private and specific instructions to his agent were not followed." In Garrard v. Haddon, 67 Pa. 82, it is said, "A party who entrusts another with his acceptance in blank is responsible to a bona fide holder, although the blank be filled with a

sum exceeding that fixed as a limit by the acceptor."
This was because where one party by his act, or silence,
or negligence, misleads another whereby an innocent per-
son suffers loss, the blamable party must bear it.  See
also Howie v. Lewis, 14 Pa. Superior Ct. 232, where a
note was delivered in blank to the payee it was held that
the maker made the payee his agent, and if he filled it for
a larger sum than he was authorized to, an innocent
party was thus made to rely upon its genuineness, and if
he parted with his property on the faith of it, the defend-
ant would be liable.  In Wolfgang v. Shirley, 239 Pa.
408, the same rule is recognized, though the case was
decided on other grounds.  In it it is said, "Where one
of two parties, who are equally innocent of actual fraud,
must lose, it is the suggestion of common sense as well as
equity, that the one whose misplaced confidence in the
agent or attorney has been the cause of the loss shall not
throw it on the other: P. R. R. App., 86 Pa. 80; Shattuck
v. American Cement Co., 205 Pa. 197."

We are satisfied from these authorities that the pe-
titioner cannot avoid liability on the judgment, for the
reason that Brubaker filled up the note for a larger
amount than he was authorized to do, or because he used
it for a purpose other than was intended.  Either the
petitioner, or the plaintiff, must suffer the loss of the fif-
teen hundred dollars which it gave to Brubaker on the
credit of the note.  The plaintiff was entirely innocent in
the matter, while the petitioner by his act made it pos-
sible for Brubaker to obtain the money, and he must
therefore bear the loss.

If we were of the opinion that this was a good defense
to the judgment we would refuse to open it for the reason
that the petitioner has not sustained the allegation of his
petition, which is denied by the plaintiff in its answer,
with the requisite proof.  This is an equitable proceed-
ing, and it is necessary for him to make out such a case
as would justify a chancellor in entering a decree: Bit-
tenbender v. Biesecker, 7 Pa. Superior Ct. 41.  A mere

conflict of testimony will not justify the court in opening a judgment. It must consider the weight of the evidence and the credibility of the witnesses, and exercise sound discretion. The presumption being in favor of the judgment, where the court is satisfied that the evidence, though conflicting, is not sufficient to justify the opening of it, a refusal to open it is proper: Jenkintown National Bank's App., 124 Pa. 337; Applebee's App., 126 Pa. 385; Rishel v. Crouse, 162 Pa. 3. Where the preponderance of the evidence is against the defendant, the judgment should not be opened: Essex's App., 1 Monaghan 588; Blauvelt v. Kemon, 196 Pa. 128. This is not changed by the Act of May 28, 1913, P. L. 358.

In his petition C. Newton Shaub alleges that he signed the note in question, on or about August 21st, to raise two hundred dollars to enable his brother, Willis J. Shaub, another of the defendants, to take stock in a corporation which C. H. Brubaker was about to organize; that he signed it in blank with the understanding that it was to be filled up for two hundred dollars, but that it was subsequently fraudulently filled up for fifteen hundred dollars, of which C. H. Brubaker received the benefit. He further alleges that no authority was given to use the note for any purpose other than to raise the sum of two hundred dollars. These allegations are denied by the plaintiff, in its answer. In his testimony, the petitioner shows that he confused this note with a note given in May previously. All the conversation in regard to the amount of the note, and the purpose for which it was to be used was had on that note, and not on the note in question. The May note was unquestionably signed in blank. He does not testify that anything was said as to the amount of the note in question, when it was signed, but that he understood it was to be for not over two hundred dollars. He testifies that it was signed by him in blank. Willis J. Shaub, another of the defendants, testified that he signed it in blank, and that C. Newton Shaub's name was on it. C. H. Brubaker testifies first that he thinks

he gave the note to Willis to have the petitioner sign it in blank, and that the petitioner did sign it in blank. Subsequently after Mr. Herr had testified that he had filled it up for fifteen hundred dollars, before any signatures were on it, he, C. H. Brubaker, being called in rebuttal by the petitioners, testified, "Q. Is it not correct that this note was filled up by Mr. Herr prior to its signature by C. Newton Shaub and Willis J. Shaub? A. I guess it was; I think it was. Q. Was what? A. Filled up." F. E. Herr, assistant treasurer of the plaintiff company, says that a few days before the note of May 23, 1907, came due, at the request of C. H. Brubaker, one of the defendants, he filled it up for fifteen hundred dollars, as it appears now, for the purpose of substituting it for the former note. No signatures were on it when he filled it up, and when brought back to the trust company by Brubaker it was signed by C. Newton Shaub, Willis J. Shaub and C. H. Brubaker. Here then we have the testimony of two witnesses, one of whom clearly confused this note with another one, that it was signed in blank, and two that it was not. There is no testimony that it was agreed that it should be filled up for only two hundred dollars. C. Newton Shaub does not say so. He says he understood it was to be filled up for that amount, and that no one had authority to fill it up for a larger amount.

We are satisfied from this testimony that the original note on May 23, 1917, was signed in blank, and that whatever conversation occurred as to the amount of two hundred dollars occurred when that note was signed and not when the note in question was. We are of the opinion that the note was not signed in blank, and that there was no agreement made that it should be filled up for two hundred dollars, no matter what C. Newton Shaub understood. We are satisfied from the testimony that it was filled up for fifteen hundred dollars before its execution and that the petitioner knew and saw what he signed.

VOL. LXXI—30

[We discharge the rule to show cause why it should not be opened as to C. Newton Shaub.]    (1)

All that we have said in the above opinion applies with equal force to the petition of Willis J. Shaub, and for the reasons herein given we discharge the rule to show cause why the judgment should not be opened on his petition.

*Error assigned* was the order of the court.

*C. E. Charles,* and with him *F. Lyman Windolph,* for appellant, cited: Henning v. Werkheiser, 8 Pa. 518; Fritz v. Commissioners, 17 Pa. 130; Fisher v. King, 153 Pa. 3; Shiffer v. Mosier, 225 Pa. 552; Everhart v. Fulmer, 58 Pa. Superior Ct. 454; Swank v. Kaufman, 255 Pa. 316.

*H. Frank Eshleman,* and with him *B. F. Davis,* for appellee, cited: Ogle v. Graham, 2 P. & W. 132; Beary v. Haines, 4 Whatt. 17; Foust v. Renno, 8 Pa. 378.

OPINION BY HENDERSON, J., April 21, 1919:

The appellant complains of the refusal of the court to open a judgment entered on a promissory note with warrant of attorney to confess judgment where a subscribing witness affixed his name to the note after it was signed by the appellant and without his knowledge or consent. The note on which the judgment was entered was signed by C. Newton Shaub and C. H. Brubaker. The name of Frank E. Herr appears on the face of the obligation as a witness. It was alleged by the appellant that the signature of the witness was affixed to the paper after he signed it, not in his presence, nor at his request, nor with his knowledge. This averment was not disputed. On this state of facts he alleges there was such an alteration of the instrument as to render it void against him. It may be conceded that the addition of the name of a witness to the signature of a party to an instrument in

writing after its execution and without the knowledge and permission of the obligor is a material alteration, but this well-known rule is not to be applied in all cases. The circumstances may be such as to require a different conclusion. Where two or more parties have affixed their names to a writing and the name of a witness is affixed in the place set apart for that purpose on the paper without the knowledge or consent of the complaining party, it does not necessarily follow that the alteration avoids the instrument. The facts in this case present an illustration. The makers of the instrument used a printed blank on which was printed the word "witness" opposite a space intended to be used by a subscribing witness of the signatures. As the witness's signature appears in the copy of the instrument printed in the paperbook it is not directly opposite either of the names of the makers. Upon its face it would appear that the witness intended to attest the signatures of both of the subscribers, but the evidence shows that the witness only intended to certify as to the signature of C. H. Brubaker. This was all he was asked to do and all he intended to do. There is nothing in the case to show that this was fraudulently done, or with the intention to obtain any advantage. There was no dispute in regard to the signature of the appellant. He admits the execution of the paper. There was no motive on the part of the payee therefore to procure a witness to his signature and no evidence of an intention on his part so to do. It was evidently inadvertence or lack of knowledge of the law which caused the signature of the witness to be attached to the paper without special reference to the name of the maker whose signature was intended to be attested. On such a state of facts, it is competent to inquire into the circumstances of the signing, and where it appears to have been done without connivance or unlawful purpose the signature of the attesting witness would be related to the act which he intended to attest.

The authorities supporting this view of the case are fully reviewed by the learned judge of the court below in the opinion filed discharging the rule to open judgment. The appeal is dismissed and the judgment affirmed.