## Lester Bros., to use of First National Bank of Saegertown, v. Shoop.

*Promissory notes—Negotiability—Warrant to confess judgment—Holder in due course—Defences—Act of May 16, 1901.*

1. Under the Negotiable Instruments Act of May 16, 1901, P. L. 194, a warrant in a promissory note to confess judgment before maturity renders the note non-negotiable.

2. The assignee or holder of a non-negotiable note takes it subject to the equities of the maker, and, as against the holder, the maker is entitled to every equitable defence available to him as against the payee.

3. A judgment entered on a confession in a promissory note will not be opened where it appears that the judgment was confessed in favor of a bank as the assignee of the note; that the note stated on its face that there was "no offset or defence of any kind running against it;" that the payee alleged that he had a conversation with an officer of the bank before maturity of the note, in which he notified him of a defence to the note, but the evidence showed that in such conversation the payee did not in any way describe or specifically refer to the note in question.

Rule to open judgment. C. P. Crawford Co., Feb. T., 1922, No. 286.

*Arthur L. Bates,* for plaintiff; *Albert L. Thomas,* for defendant.

PRATHER, P. J., July 31, 1922.—The complaint is that the payee in said note obtained it from the maker through fraudulent representations, with a condition annexed that the maker might call at any time within four months from its date and withdraw it from the Saegertown Bank.

Testimony was taken tending to prove the allegations in said complaint. In addition thereto, it was contended by the defendant that on Dec. 31, 1921, some ten days before the maturity of said note and within the time agreed upon between him and the payee, he called at the Saegertown Bank for the purpose of withdrawing said note. In substance, deponent says he spoke to O. M. Thompson, cashier of the Saegertown Bank at that time, and made it clear what he wanted to do; that he told Mr. Thompson he was there accord-

2 D. & C.

ing to the word of Mr. Doblebower to withdraw the note that he had given to the Lester Brothers; that he was told that the note was not there. Then occurs the following question and answer: "Q. Did you tell him at that time that the note was given with the understanding that you could withdraw it within the four months? A. I did."

On the part of the use-plaintiff, Mr. Thompson denies that the defendant ever called at the bank for the purpose named or made any disclosure concerning said note.

He also testified that the use-plaintiff, on Jan. 7, 1922, purchased said note for value, less ordinary discount, and made payment therefor to the payee therein named; that he never knew of nor saw said note until the day he purchased it.

The note was dated Saegertown, Pa., Sept. 10, 1921, and was for four months. The printed part of the note containing the warrant of attorney reads as follows:

". . . And in case of default of payment at maturity, an additional five per cent. for collection of the same. And we jointly and severally empower any Attorney of Record in this Commonwealth, or elsewhere, to appear for us, or either of us, and confess judgment against us, or either of us, for the same and accrued interest, together with five per cent. attorney's fees, with costs of suit, release of errors, and without stay of execution; and for value received we jointly and severally do waive the right and benefit of any law of this or any state exempting property, real or personal, from sale; and if levy is made on land, we do jointly and severally waive the right of inquisition, and consent to the condemnation thereof with full liberty to sell the same on *fi. fa.*, with release of errors thereon. We further declare, for the purpose of enabling the payee or holder to negotiate and sell this note, that there is no agreement nor understanding other than for its full payment in lawful money when due, that there is no offset nor defense of any kind or nature against it."

The first question arising is the character of the note as to negotiability. The statute relating thereto is the Act of May 16, 1901, P. L. 194, and the particular inquiry is whether the authority to confess judgment contained in said note renders it non-negotiable.

In Universal Talking Machine Co., to use of Rockford Cabinet Co., v. M. E. Inmann, at No. 343, May Term, 1921, Court of Common Pleas of Crawford County, we held a note non-negotiable which contains the following clause: "I hereby authorize . . . any attorney . . . to appear for me . . . at any time hereafter and confess a judgment," etc.

In Volk v. Shoemaker, 229 Pa. 407, 409, the Supreme Court said: "No copy of the judgment bond was printed in the record, but it is apparent from what is shown that it authorized the entry of judgment at any time, and, under the Act of May 16, 1901, § 5, P. L. 194, 195, the effect of a provision authorizing a confession of judgment before maturity is to make the instrument non-negotiable." See, also, Milton National Bank v. Beaver, 25 Pa. Superior Ct. 494.

As there is no specification or limitation in time as to when the judgment might be confessed under the warrant of attorney in the note now under consideration, it is clearly a non-negotiable instrument under the authorities cited.

Conceding that, as between the maker and the payee, there is a good defence to said note, our next inquiry is whether that defence is available as against the use-plaintiff under the facts in this case.

Lester Bros., to use of First National Bank of Saegertown, v. Shoop.

Under the 55th section of said act, this instrument became defective when the payees negotiated it in breach of faith between them and the maker.

Under section 59 of the same act, this shifted the burden on the holder to prove that he, or some person under whom he claims, acquired the title as holder in due course. We think the evidence justifies the conclusion that the use-plaintiff was a holder in due course.

It is urged that it was not a holder in due course for the reason that the maker called at the Saegertown Bank before the maturity of said note and requested its withdrawal, according to his agreement with the payee. We cannot adopt this contention. In that alleged conversation there is not a syllable of testimony directed to the identity of any particular note. True, a note was referred to, but neither the date of its execution nor its maturity, nor its amount nor the subject-matter for which it was given, nor any alleged fraud or breach of faith was mentioned in that conversation. We cannot, therefore, conclude that the bank had any notice that defendant was alleging any defect in this particular instrument which was subsequently negotiated.

This brings us to the familiar principle that the assignee or holder of a non-negotiable note takes it subject to the equities of the maker, and that, as against the holder, the maker is entitled to every equitable defence available to him as against the payee: Bircleback v. Wilkins, 22 Pa. 26; Howie v. Lewis, 14 Pa. Superior Ct. 232.

In Howie v. Lewis, 14 Pa. Superior Ct. 232, the warrant of attorney there under consideration contained the following statement or stipulation: "And (I) do further agree that this note shall be subject to the same rules governing commercial paper as to equities."

The Superior Court held the note to be non-negotiable, and as to the effect of the stipulation just recited said: "This was a waiver by the defendant of the right to inquire into the adequacy of the consideration, or the fairness of the original transaction, and invested a purchaser for value with a counter-equity, which was superior to that residing in the maker of the note. The ground upon which the maker of non-negotiable paper, who has declared that he has no defence, is estopped from afterwards alleging want of consideration in the original transaction as against a purchaser for value, to whom he had made the representation, is that he has authorized the negotiation of the instrument and induced another to part with his money upon the faith of his representation. Where the maker of such an instrument executes at the same time and delivers to the payee, mortgagee or obligee a writing certifying that he has no defence or defalcation, it is in effect an agreement that the payee or mortgagee shall negotiate the security. It is an acknowledgment that he has received full consideration, and it would be in the highest degree inequitable to allow such maker, mortgagor or obligor to set up that there was fraud in obtaining the note, mortgage or bond. The efficacy of all certificates of no defence, or declarations of that character, is based upon the principle that he who has induced another to invest money upon the faith of his declaration of the validity of the security shall not afterwards be heard to impeach such security: Hutchison v. Gill, 91 Pa. 253; Edgar v. Kline, 6 Pa. 327; Griffiths v. Sears, 112 Pa. 523."

This principle of estoppel based upon superior equities is recognized in Shattuck v. American Cement Co., 205 Pa. 197; Shaub v. Shaub, 71 Pa. Superior Ct. 456.

In Second National Bank of Pittsburgh v. Hoffman, 233 Pa. 390, Hoffman, in defence, alleged that his endorsement upon the obligation of J. M. McKee for $7000 was procured by fraud. This fraud was established. Upon these

2 D. & C.

facts the Supreme Court said in the same case, reported in 229 Pa. 429: "This being the situation, there was cast upon the appellee (the bank) by the plain words of the Act of 1901 the burden of proving that it had taken the note in good faith and for value and without any notice of the fraud which had been perpetrated by McKee in procuring the endorsement of the appellant."

It thus appears that the burden cast upon the bank in that case was the same as the burden placed upon the plaintiff bank in the case before us, and the defence of fraud perpetrated by the payee upon the maker gives rise to a legal proposition identical with our own. In reversing the judgment of the lower court in favor of the defendant and directing judgment for plaintiff, the Supreme Court, as reported in 233 Pa. 394, said: "He (the bank's cashier) was called as a witness again on the second trial, and testified, substantially as he had testified before, as to the bank's ignorance of the fraud practiced by McKee upon the defendant; but on the last trial the plaintiff did not rely upon his testimony alone as to this. It conclusively appeared from the testimony of the defendant himself, and from that of McKee when on the stand as one of his witnesses, that the bank had no knowledge whatever of what had taken place between them at the time the defendant endorsed the note. The admission of the defendant was that neither he nor any one for him had ever communicated with the bank, and McKee testified that he had never communicated to it the talk he had had with the defendant on the evening that the latter endorsed the note. It thus affirmatively appeared from the defendant's own admission and from the testimony of McKee, one of his witnesses, that the bank had no knowledge of the latter's fraud upon the defendant, and it was, therefore, error in the court below to permit the jury to pass upon that question. It was not a disputed one after the defendant and McKee had testified. As a result of permitting the jury to treat it as such, there followed a verdict not only perverse and clearly against the weight of the evidence, but in the face of testimony from which the only possible conclusion to have been drawn by honest minds was that the bank was utterly without knowledge of McKee's fraud upon the defendant."

As heretofore stated, defendant's statement as to his alleged conversation with the bank officer prior to maturity of the note was too vague and indefinite to visit plaintiff with any knowledge concerning the note in question, much less a defence against it on account of fraud. When this evidence has failed in its purpose after giving to it its fullest significance in favor of defendant, it amounts to an admission that the bank had no knowledge of the transaction between defendant and the payees of the note.

In the obligation in question the defendant had stated over his own signature the following: "We further declare, for the purpose of enabling the payee or holder to negotiate and sell this note, that there is no agreement or understanding other than for its full payment in lawful money when due, that there is no offset or defence of any kind running against it."

Having regard to the legal effect of the proofs referred to, and the statement of no defence just recited and the superior equities of the parties arising therefrom, we are of the opinion that defendant is not entitled to the relief sought, and, therefore, that the rule should be discharged.

Now, July 31, 1922, rule to open judgment discharged.

**From Otto Kohler, Meadville, Pa.**